CHAPMAN, Plf. in Error, *v.* GALE.

32   141
f74   144
74   145,
74   146

A pledgee of personal property is answerable in a trustee process only for the balance which remains in his hands after satisfying his legal and equitable claims.

A power to sell a pledge is not affected by a trustee suit.

The claim of the principal debtor against the estate of one sued as his trustee, will be barred by a neglect to present the claim to the commissioner, or by its disallowance, and a neglect to appeal.

The creditor in a trustee process may present the claim of his debtor against the estate of his trustee, and appeal, if it is disallowed.

If the claim of the debtor is barred, the right of the creditor in the foreign attachment is gone.

Proceedings in the trustee suit may be stayed, without cost, until the claim can be presented to the commissioner.

THIS is a writ of error, brought to reverse a judgment rendered in the Court of Common Pleas, holden on the second Tuesday of February, 1855, in an action in which Abigail Chapman, now plaintiff in error, was plaintiff, James Derby was defendant, and James Burley was summoned as trustee of said Derby.

Pending the action, which was commenced August 25, 1849, James Burley died, December 16, 1850, and Harriet L. Burley was appointed executrix of his will. She represented the estate insolvent, and a commission issued to adjust and allow the claims against the estate, April 9, 1851, which expired December 1, 1851. At that time, the time allowed for the presentment of claims was extended to November 1, 1852.

Mrs. Burley, the executrix, died October 8, 1852, and Harriet M. Gale, the defendant in error, was appointed administratrix *de bonis non* on the 9th of November, 1852. The report of the commissioner was accepted March 15, 1853. At the September term, 1853, Harriet M., the administratrix, began her disclosure, which was completed and sworn to June 20, 1854.

At the February term, 1855, an issue was joined between the plaintiff and the administratrix, whether the latter was chargeable as trustee, which was tried by jury at the same term, and a verdict was found for the administratrix.

It appeared that twenty-three shares in a corporation, called the New-England Steam and Gas Pipe Company, were assigned

by James Derby, the principal debtor, to said James Burley, the original trustee, as collateral security for the payment of certain debts of Derby to Burley, and as indemnity for certain liabilities incurred by said Burley for said Derby.

On the 2d of November, 1848, Derby gave to Burley a writing, as follows:

" J. Burley has authority to transfer all stock he holds for me to the New-England Steam and Gas Pipe Company.

" November 2, 1848."                                    JAMES DERBY."

On the 9th of April, 1853, the administratrix sold these twenty-three shares, with two notes, held by her as administratrix of Burley, against Derby, for $1150, being the full value of the stock.

The whole amount of Derby's indebtedness to Burley's estate was at that time $2.804,78, consisting of a note of April 1, 1847, for $500, and interest, indorsed $102,65, April 1, 1850 ; a note for $2.570,70, and interest, dated June 14, 1848, indorsed, February 6, 1849, $1.167,60, and $365,18 debt for costs and charges.

Derby presented to the commissioner on Burley's estate, with the knowledge and consent of this plaintiff, his claim, as follows:

Two notes of $1000 each,  . . . . . . . . $2.000
Balance of foundry account,  . . . . . . . . 1.900
Twenty-three shares of N. E. Steam, &c., Co., esti-
    mated at . . . . . . . . . . . . .          750

And the administratrix presented her claim in offset.

Under the claim of Derby is the following entry in the report of the commissioner:

" From which deduct the following, due by Derby to J. Burley's estate, viz. :

" Due on note dated April 1, 1847,  . . . . $562,89
Due on note dated June 14, 1848,  . . .    1.827,55
Amount of writ, *Chapman* v. *Derby* and Trus-
    tee,  . . . . . . . . . . . . .          500,00
                                           _____
Making a balance due J. Burley's estate of   $2.144,00

" Provided said estate shall be held liable as trustee in said action."

Nothing was allowed on Derby's claims, and the report being accepted, there was no appeal from the decision of the commissioners.

The court charged the jury, that " by the assignment of the shares into the name of Burley, and the power to sell them, which Derby had given to Burley, Burley had a right to sell them, notwithstanding the service of the trustee writ upon him, and to apply the proceeds to pay and discharge the claims against him as surety for Derby, and for which purpose he received those shares, and that he was accountable over to Derby, or his creditors, for the surplus only ; and that for any such surplus of money remaining in his hands at the death of said Burley, Derby, or Derby's creditors in his name, must present their claim to the commissioner ; and that if not so presented, or if presented and disallowed, and no appeal was taken, such claim is barred, and such surplus money could not be recovered in this suit."

To these instructions the plaintiff excepted.

The jury found a verdict in favor of the trustee, and the plaintiff filed her bill of exceptions, which was allowed and signed by the presiding judge.

In the *scire facias* to hear errors, the errors are assigned as follows :

" Because the court charged the jury," ( in the words above recited.)   To this assignment the defendant pleads " *in nullo est erratum*," &c.

*Wood*, for the plaintiff in error.

*Hatch*, for the defendant.

BELL, J.   The shares were pledged to Burley, and he had express authority to sell them.   This was an authority coupled with an interest, and passed to his representatives.   *Bergen* v. *Bennett*, 1 Caine, Ca. in Error.

No question is made as to the propriety of the exercise of this power, except on the ground of the pendency of this trustee process. But the creditor in this process acquired no rights to the property in the trustee's hands, in derogation of the rights of Burley and his representatives. She acquired an interest only in what might remain legally and equitably due to Derby, or his property, after satisfying the claim of Burley. *Boardman* v. *Cushing*, 12 N. H. 105; *Aldrich* v. *Woodcock*, 10 N. H. 99; *Swamscot Co.* v. *Partridge*, 5 Fost. 369.

The charge of the court does not, therefore, seem to us objectionable in this particular.

If the jury could have found that the shares were sold at an undervalue, or that Derby's debt to Burley's estate was less than the just value of the shares, so that on a settlement a balance would be due to Derby, the point thereby should become material, the residue of the charge was correct.

It is plain that Derby's own claim against Burley's estate would be barred, if it was not duly presented to the commissioner. And there is no provision by which the interest of any other person in his claim can be secured, unless it is presented by some one. The language of the statute is: " All demands against any estate which might be presented to the commissioners, and were not so presented, and all demands so presented and rejected, and not allowed upon an appeal as aforesaid, shall be forever barred." Rev. Stat., ch. 163, sec. 15; (C. S. 417, sec. 16.) Actions of review are made on express exception to this general rule. Rev. Stat., ch. 161, sec. 9. But the statute contains no exception applicable to this case, and its general policy, which looks to the prompt settlement of estates under administration, hardly admits of any presumption in favor of any implied exception. No good reason seems to call for an exception in cases of this kind.

The general rule prescribed by the statute, that " no action shall be commenced or prosecuted against an administrator, where the estate is decreed to be administered as an insolvent estate, but the cause of action may be presented to the commis-

sioners and allowed, with the costs of any action pending at the time of such decease." Rev. Stat., chap. 161, sec. 8, does not apply to this case, which is governed by section 24 of chapter 208 : " If any person summoned as trustee shall die before disclosure made, or before judgment, his executor or administrator may come in, or be summoned in, to become a party to such action, as in other cases, and shall be liable in the same manner as if said action had been originally commenced against such executor or administrator."

Under this provision the executor or administrator can only be charged for property in the hands of the trustee, and remaining in their hands at the time of the rendition of the judgment, if there is no fraud or fault on his part; or if the process is founded on a contract or debt due from the deceased to the principal debtor, no recovery can be had if the contract or debt is barred without fault of the trustee. The duty is incumbent on the claimant to see to it that the rights of the principal debtor are not lost or sacrificed, and not on the executor or administrator.

The creditor, by his attachment under the trustee process, acquires a lien upon the property in the hands of the trustee, or upon the debt due from him to the principal debtor, which entitles him to present it to the commissioner, and to claim its allowance, as he would have if he held the same in pledge, or by a mortgage ; and if upon such presentment the claim was disallowed, his right to appeal would be protected, as in other analogous cases. *Clark* v. *Courser*, 9 Fost. 170.

If the plaintiff is able to obtain a verdict and judgment in the trustee process in season to present the same to the commissioner, that is undoubtedly the judicious and proper course, and all parties before the commissioner would, of course, be concluded by such a judgment. But this may often be impracticable. The short period allowed for the presentment of claims may expire before a decision can be had in a trustee suit. While the trustee suit is pending undetermined, the proceedings before the commissioner, which are in their nature summary, may be

brought to a close, and the claims not presented, or not allowed, will be barred. ' That bar will be equally binding upon the claimant and all persons claiming under him.

To prevent the loss of his claim against his trustee, it is necessary for the plaintiff to guard against the loss or extinguishment of the trustee's claim, by presenting it himself to the commissioner, in case the trustee should neglect it, and prosecuting it to a decision. He has no means to compel the debtor to present or prosecute the claim, and he must, of course, in some form establish the claim of his debtor against his trustee, before he can expect to recover, and he is subjected to no disadvantage by being required to do this before the commissioner. On the hearing before the latter he may avail himself of every advantage that he could have upon the trustee process. This seems to us to be the construction of these statutes, required by the public convenience, and the interest of all parties concerned.

It would seem to follow, from these views, that where it appears to the court in which a trustee suit is pending, that a decision cannot probably be had there in time to be presented to the commissioner, it would be proper for the court to order the proceedings to be stayed before them, until the claim should be presented and considered by the commissioner. This might be done without costs during the delay, if a proper case was shown.

It appears that in this case the claim of the trustee was in fact presented to the commissioner by him, with the assent and knowledge of the plaintiff, and it was disallowed. Why an appeal was not prosecuted does not appear, but there is nothing to fix any responsibility on that account upon the administratrix as trustee, and the claim was clearly barred by the neglect to appeal.

There being, then, no error in the charge of the court, there must be                          *Judgment for the defendant.*